UNITED STATES DISTRICT COURT                      FOR ONLINE PUBLICATION
EASTERN DISTRICT OF NEW YORK                      ONLY
-------------------------------------------------------------- X
RAYMOND PEREZ,                                   :
                                                 :
                              Petitioner,        :
                                                 :        MEMORANDUM
                                                 :        AND ORDER
            - against -                          :
                                                 :        09-CV-2233 (JG)
                                                 :
RAYMOND CUNNINGHAM, Superintendent,              :
Woodbourne Correctional Facility,                :
                                                 :
                              Respondent.        :
-------------------------------------------------------------- X

A P P E A R A N C E S:

            RAYMOND PEREZ
                  # 05A2931
                  Woodbourne Correctional Facility
                  99 Prison Road, Box 1000
                  Woodbourne, NY 12788
                  Petitioner, *pro se*

            CHARLES J. HYNES
                  District Attorney
                  Kings County
                  350 Jay Street
                  Brooklyn, NY 11201
            By:   Jodi L. Mandel
                  Attorney for Respondent


JOHN GLEESON, United States District Judge:

            Raymond Perez, a prisoner incarcerated in the Woodbourne Correctional Facility

pursuant to a judgment of the New York State Supreme Court, Kings County, petitions for a writ

of habeas corpus under 28 U.S.C. § 2254.  After a jury trial in 2005, Perez was convicted of first-

degree manslaughter for stabbing a man to death on a Brooklyn street in 1985.  Appearing *pro*

*se*, Perez contends primarily that the prosecutor made improper arguments when summing up the

People's case.  Oral argument, at which Perez appeared by teleconference, was held on

September 10, 2009.  For the reasons set forth below, the petition is denied.


BACKGROUND

A.      *The Offense Conduct*

Perez's conviction arose out of an altercation just south of Prospect Park.  The

evidence at trial established that on the afternoon of September 16, 1985, Perez was in a fourth-

floor apartment at 55 Parade Place belonging to his cousin, Sully Bermudez.  Bermudez and

another cousin, Julio Rodriguez, were also present.  At approximately 3:30 p.m., they looked

down and saw Armando Javier Concepcion on the street.  Concepcion pointed a finger up to

Perez and beckoned him to come down.  Perez told Rodriguez and Bermudez that he had to "go

talk to that guy," and the three men went downstairs to meet Concepcion.  Tr. 262.

On the street, Perez and Concepcion exchanged harsh words, and their quarrel

soon devolved into a fistfight.  With some difficulty, Rodriguez and Bermudez broke up the

brawl, but the disagreement continued.  Concepcion said something like, "if you [are] man

enough, you got to move from here, because I'm going to get you,"[1] or "if you're a man, you'll

stay right here and if you're not, you'll move away, you'll move from the block."[2]  As

Concepcion walked away, Perez pulled out a butterfly knife[3] and stabbed Concepcion in the

back.  Concepcion turned around and tried to grab the knife, but Perez continued to stab him.

---

[1]      Rodriguez's version.  Tr. 237.

[2]      Bermudez's version.  Tr. 296.

[3]      A butterfly knife is a knife that opens on two sides, and when opened, the blade is in the middle and the two sides that open form the knife's handle.  Tr. 238-39.

After receiving two knife wounds to the front of his chest and two to the back, Concepcion died from his injuries.

Perez apparently fled to the Dominican Republic a few hours after the stabbing. Though he later returned to the United States and was arrested on various unrelated charges in New York and Florida, he escaped arrest for Concepcion's stabbing for almost two decades because of a clerical error. In April 2004, however, the NYPD resumed its investigation into Perez's whereabouts and determined that he was incarcerated in a federal prison in New Jersey.

B.      *The Trial Proceedings*

On October 1, 2004, fully nineteen years after the incident, Perez was indicted on two counts of second-degree murder. The trial judge, Justice Demarest, later dismissed one of the murder counts because the evidence before the grand jury was insufficient to support a finding of depraved indifference. Perez's trial on the remaining murder charge -- intentional murder -- began on March 29, 2005.

At trial, Rodriguez and Bermudez each testified that Perez stabbed Concepcion after an argument between the two men. The defense theory was that, notwithstanding this testimony, neither of the witnesses actually saw the stabbing. On cross-examination, Perez's counsel sought to impeach Rodriguez by pointing to an alleged inconsistency between his trial testimony and a statement he gave to police shortly after the incident. In the statement, Rodriguez had said that Concepcion told Perez he was going to "kill" him shortly before the stabbing. Tr. 260.

During his summation, the prosecutor observed that, while Perez's counsel had used Rodriguez's statement to the police to cross-examine him on the content of Concepcion's threat, the defense lawyer had not used the statement to impeach Rodriguez's testimony that

Perez stabbed Concepcion in the back.  The prosecutor then invited the jury to infer that

Rodriguez had told the police exactly that in 1985.  Additionally, later in the summation, the

prosecutor referred to the length of time between the incident and the trial, noting that

Concepcion had been dead for twenty years, and that his family had been without him for that

period of time.  The defense attorney objected to both of these statements, and moved for a

mistrial based on the statement about Concepcion's family, but the court overruled the objections

and denied the motion for a mistrial.

   The jury acquitted Perez of the murder charge, but convicted him of the lesser-

included offense of first-degree manslaughter.  Justice Demarest imposed a sentence of eight-

and-a-third to twenty-five years in prison.

C. *Appellate and Post-Conviction Proceedings*

   Perez appealed his conviction to the Appellate Division, Second Department,

arguing that the prosecutor's comments during summation -- concerning Rodriguez's statement

to the police and the Concepcion family's twenty-year loss -- violated due process.  Additionally,

Perez argued that he was denied effective assistance of counsel when his trial counsel failed to

move for a mistrial based on the remark about Rodriguez's statement.  The Appellate Division

rejected all those contentions, and affirmed the conviction in a decision dated September 23,

2009.  *People v. Perez*, 863 N.Y.S.2d 609 (2d Dep't 2008).  The appellate court held that

"contrary to the defendant's contention, the remarks do not warrant reversal and a new trial."  *Id.*

at 609 (citing *People v. Crimmins*, 36 N.Y.2d 230 (1975)).  The court then concluded that

Perez's remaining contention -- the ineffective assistance claim -- was "without merit."  *Id.*  A

judge of the New York Court of Appeals denied Perez's motion for permission to appeal to that

Court on January 20, 2009.  *People v. Perez*, 11 N.Y.3d 928 (2009) (Read, J.).

Perez, acting *pro se*, also moved in the trial court under Criminal Procedure Law § 440.10 to vacate his conviction based on a different ineffective assistance of counsel claim.  In that motion, Perez argued that his lawyer erred by failing to move for dismissal based on the nineteen-year pre-indictment delay.  The trial court denied Perez's motion to vacate judgment both procedurally, because the claim could have been raised on direct appeal, and on the merits, because any motion to dismiss the indictment based on delay would have failed.  A justice of the Appellate Division denied Perez's application for leave to appeal the denial of the post-conviction motion on March 12, 2009.  *People v. Perez*, No. 5998/04 (2d Dep't Mar. 12, 2009) (Ritter, J.).

D.      *This Petition*

On May 22, 2009, Perez filed a petition for habeas corpus with this Court.  The petition argues: (1) that the prosecutor's arguments during summation concerning Rodriguez's statement to the police and the Concepcion family's twenty-year loss violated Perez's right to a fair trial, and (2) that his lawyer's failure to move for a mistrial based on the prosecutor's remark about Rodriguez's statement constituted ineffective assistance of counsel.


DISCUSSION

A.      *The Standard of Review*

All the claims in Perez's habeas corpus petition were adjudicated on the merits by the Appellate Division.  Accordingly, each is reviewed under the deferential standard for state-court determinations mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Under AEDPA, a federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  *Id.* at 413.  An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required … the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (internal quotation marks omitted).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it explicitly refers to federal law in its decision.  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.      *Perez's Claims*

      1.      *Prosecutorial Misconduct*

      Perez contends that the trial proceedings violated his right to due process. Specifically, he argues that two of the prosecution's statements during summation -- that the jury could infer that, in 1985, Rodriguez told the police that Perez had stabbed Concepcion in the back, and that the Concepcion family had "been without" the victim for twenty years -- warranted a mistrial. I conclude that these claims of prosecutorial misconduct do not warrant habeas corpus relief.

      Because the Appellate Division ruled on the merits of these claims, I review them under the deferential AEDPA standard described above. Moreover, a claim of prosecutorial misconduct during summation that does not implicate a specific provision of the Bill of Rights will lie only where the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). A petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994); *see also Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (the comments must be "so prejudicial that they rendered the trial in question fundamentally unfair") (internal quotation marks omitted). In making this determination, the habeas court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Bentley*, 41 F.3d at 824.

Perez's objection to the first statement is that the jury was invited to speculate on matters outside the evidence. Rodriguez's hearsay statement to the police was presumably inadmissible in the government's case-in-chief, and the prosecutor did not seek to introduce it. During the summation, however, the prosecutor noted that the defense lawyer had used the statement to cross-examine Rodriguez on whether Concepcion explicitly threatened to kill Perez. The prosecutor contended that it was significant that the defense lawyer did not use the statement to impeach Rodriguez's testimony more generally:

> You heard on the same day [Rodriguez] went down to the police station and he was cross-examined on some of the statements he made that was audiotaped and there was a transcript. Did counsel talk about him bearing his statement about seeing the defendant with a butterfly knife? No. About Julio Rodriguez seeing the defendant stab Javier in the back? No. And I submit to you even the inference is that when this happened he gave the same statement.

Tr. 362. Perez's counsel objected to the claim that the jury could infer that Rodriguez's prior statement was consistent with his trial testimony. The trial judge overruled the objection, saying "that's for the jury's consideration." Tr. 362-63. The judge reminded the jurors, however, that they could not speculate about something that was not in evidence.

A prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation. Here, the prosecutor's defense of Rodriguez's testimony was a fair response to the defense lawyer's use of the police statement to attack the witness's credibility. Defense counsel made good use of Rodriguez's recorded statement to the police in 1985 in seeking to undermine his trial testimony about how long it took to go downstairs from Bermudez's apartment, Tr. 254, and about the content of Concepcion's statement to Perez. Tr. 259. It was fair game for the prosecutor to point out that no such impeachment occurred with respect to Rodriguez's testimony about the stabbing itself. Moreover, even assuming that the prosecutor's statement made reference to facts outside the trial record, it would not even

8

approach the kind of "egregious misconduct" that would violate Perez's constitutional right to due process of law.  *See Floyd*, 907 F.2d at 353 ("[T]he Supreme Court has instructed federal courts reviewing habeas claims brought by state prisoners and premised upon prosecutorial misconduct in summation to distinguish between ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount[ing] to a denial of constitutional due process.") (internal quotation marks omitted).  Finally, the jury was warned immediately by the trial judge not to speculate on matters outside the evidence, thus reducing any risk of improper speculation.  Accordingly, the Appellate Division properly rejected Perez's request for a new trial based on this remark.

As regards the second prosecutorial comment at issue, Perez contends that the prosecutor impermissibly "garnered the jury's sympathy by invoking the family's 20 years of grief since the death of Javier Concepcion."  Petition at 4.  The prosecutor stated:

> For 20 years, [Perez] has not had to own up to that responsibility.  Javier has been dead for those 20 years.  So, it's not an issue of an old case.  The person has been dead, his family has been without him for that period of time.

Tr. 371.  Perez's counsel objected to this statement, but the court overruled the objection.  After summations, defense counsel moved for a mistrial, arguing that it was inappropriate for the prosecutor to comment that Concepcion's family had been without him for twenty years.  The prosecutor responded that his remarks were a fair response to defense counsel's earlier comments about the age of the case.  Tr. 392; *see* Tr. 352 (defense counsel: "is there any physical evidence to back up the claims of people's memories twenty years down the line?  The answer is obvious.").  The judge denied the motion for a mistrial, stating: "This is a little bit unusual in that it is a very old case.  That's been in issue from the very beginning and I don't find

the comments to have been so overwhelmingly prejudicial here [as] to warrant a mistrial." Tr. 393.

Perez argues that duration of the family's grievances was wholly irrelevant, and that the prosecutor's comment could only have had an improper purpose: to appeal for the sympathy of the jury. The prosecutor's statement, however, was well within the bounds of acceptable rhetoric, particularly in light of Perez's own reliance on the age of the case. In any event, the remark was not so inflammatory as to risk inducing the jurors to reach a verdict contrary to the evidence, particularly after the judge had charged them that they could not consider sympathy when reaching their verdict. *See* Tr. 373.

In sum, the challenged statements in the prosecutor's summation did not deprive Perez of a fair trial. The state court's decision rejecting these claims was neither contrary to nor an unreasonable application of federal law. Moreover, given the plentiful evidence of Perez's guilt, even if the statements were improper, they would not warrant the grant of habeas relief because they did not have a substantial and injurious effect or influence on the jury's verdict. *See Fry v. Pliler*, 551 U.S. 112, 121 (2007). Accordingly, Perez's objections to the summation provide no basis for a writ of habeas corpus.

2.    *The Ineffective Assistance of Counsel Claim*

Perez contends that he was denied his right to effective assistance of counsel when his lawyer failed to move for a mistrial based on the remark about Rodriguez's testimony. This claim, too, is without merit.

Perez's counsel objected to the statement, and though the judge overruled the objection, she also reminded the jurors not to speculate on matters beyond the evidence. For the reasons given above, and especially in light of the curative instruction, counsel's decision not to

10

move for a mistrial was a sensible one, and was certainly not so deficient as to infringe on Perez's Sixth Amendment right to counsel.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("[T]he defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.").  The Appellate Division's rejection of that claim on the merits was neither contrary to, nor involved in unreasonable application of, clearly established federal law.

CONCLUSION

For the reasons stated above, the petition for habeas corpus is denied.  As Perez has not made a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated:        September 17, 2009
              Brooklyn, New York

11